# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:19-CR-230 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JAMES S. GWIN |
| vs. | : | |
| | : | |
| JOSHUA WALKER, | : | **SENTENCING MEMORANDUM** |
| | : | **FOR JOSHUA WALKER** |
| Defendant. | : | |

Defendant Joshua Walker, through undersigned counsel, submits the instant Sentencing Memorandum for the Court's consideration and requests a sentence, as calculated and reviewed pursuant to Title 18, United States Code §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Counsel attaches the following Memorandum to assist the Court in fashioning Mr. Walker's sentence.

Respectfully submitted,

 /s/ Timothy J. Kucharski
Timothy J. Kucharski [0062226]
1200 W. 3rd Street
Suite #190
Cleveland, Ohio 44113
Ph. 216.623.6600 / 216.857.3001
Fax 216.574.9813
Attorney for Joshua Walker

**MEMORANDUM**

**I.     Introduction**

Defendant Joshua Walker now appears for sentencing. The presentence report suggests his sentencing guideline range is 87-108 months, based on a total offense level 20, but which is increased to an offense level of 29 based on a cross-reference of voluntary manslaughter (but 2 levels may be deducted for acceptance of responsibility resulting in an offense level of 27) and a Criminal History Category III. This Memorandum details mitigation and challenges to the cross-reference increase not included in the presentence report that supports a fair sentence under the factors codified at 18 U.S.C. § 3553(a). Joshua Walker requests this Court impose a sentence of 12 to 36 months of imprisonment, which would be sufficient but not greater than necessary to achieve the statutory goals of sentencing and be consistent with what others who have committed the same crime would and have been sentenced to serve.

**II.    The Charges and Background of the case in State and Federal Court.**

On October 25, 2018 Joshua Walker was indicted by the Cuyahoga County Grand Jury for two (2) counts of murder (unclassified felony), voluntary manslaughter (felony of the 1st degree), felonious assault (felony of the 2nd degree), and **having weapons under disability** (felony of the 3rd degree). Joshua Walker was set to go to trial in the Cuyahoga County Court of Common Pleas on March 25, 2019. Immediately prior to the commencement of the trial, the State of Ohio acknowledged Joshua Walker's defense of self-defense and moved to dismiss the entire case without prejudice. (Exhibit "___") .

In the State of Ohio's original case, the offense of Having a Weapon Under Disability, R.C. 2923.13, a 3rd degree felony with a sentence range of a community control sanction or a

definite prison sentence ranging from 9, 12, 18, 24, 30 or 36 months. R.C. 2929.14(A)(3). Thus, if the State of Ohio did not dismiss Josh's state case and he was convicted in the Cuyahoga County Court of Common Pleas of having a weapon under disability, he would have been sentenced, assuming he was not granted "probation", to prison from 9 months to a **maximum** 36 months in prison. However, after the State dismissed their case, the United States "picked" up the case and indicted Joshua Walker for the instant matter. The instant indictment charged Joshua Walker with an offense identical to that contained in the state indictment; that being a felon in possession of a firearm/ammunition.

That case went to trial on June 20, 2019. The jury returned a guilty verdict on the single count of being a felon in possession of ammunition. The evidence presented at trial included security videos of the incident from a of variety of angles. What the video never showed was Joshua Walker instigating or provoking any altercation prior to him being attacked. Rather, it showed Aaron Mason putting on "fighting gloves", tying his shoes and then walking over to Joshua Walker to initiate an unprovoked attack by "sucker punching" Joshua Walker. The fight spilled out onto the sidewalk where Aaron Mason was shot and ultimately died as a result of his gunshot wounds. Based on Joshua Walker being found guilty of the felon in possession, he faces a statutory maximum sentence of ten (10) years. This ten (10) year sentence is seven (7) more years than he would have faced if he was convicted of the identical offense in state court. But, as this Honorable Court already knows, his state charges were dismissed upon the acknowledgement of the Cuyahoga County Prosecutor that Joshua Walker's defense of self-defense would have prevailed if the matter went to trial.

### III. Applicable Legal Standards

In *Kimbrough v. United States*, 552 U.S. 85 (2007), the United States Supreme Court reaffirmed the framework for Courts fashioning a defendant's sentence. Under *Kimbrough*, Courts must treat the Guidelines as the "starting point and the initial benchmark" when formulating a reasonable sentence. *Id.* However, the Guidelines are instead merely the starting point for a nuanced assessment of each individual case and the appropriateness of the Guidelines sentence must be judged against the other factors in 18 U.S.C. § 3553(a). *Id.* While the statute still requires a court to give respectful consideration to the Guidelines, the court must tailor the sentence in light of the other factors in § 3553(a) as well. *Booker v. United States*, 543 U.S. 220, 245-246 (2005).

The totality of these factors promotes a "holistic" sentence which may result in sentences lower than those previously calculated under a mandatory guideline scheme because the possible sentencing range no longer prohibits courts from considering any specific factor. Another crucial statutory sentencing authority is 18 U.S.C. § 3661, entitled "Use of information for sentencing." This provision also emphasizes a holistic sentencing approach, stating:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C § 3661. In applying the 18 U.S.C. § 3553(a) sentencing factors and these legal standards, there is ample support for the conclusion that Joshua Walker warrants a sentence consistent with what an individual in Ohio's state court would be facing if convicted of having a weapon under disability: 9-36 months in prison.

**IV.     Josh Walker's personal history and characteristics**

Joshua Walker is a kind and caring 35-year-old man who grew up in Cleveland but moved to Phoenix, Arizona to start his life anew. Joshua Walker was one of four (4) children born to his mother. He was raised by his mother as his father died when he was just three (3) years old. Tragically, in addition to his father dying, his two (2) brothers also died at young ages. Josh is his mother's only surviving male of the family, explaining the tattoo on his back: "Mama's Last Man Standing". Josh's life has not been perfect but his mother, along with his sister and brothers, made the best of life. Despite his efforts, Joshua Walker was convicted of a drug related offense and spent time in prison (i.e. the predicate offense for the felon in possession).

Sadly, Joshua Walker is like many other father-less young men. While his mother was working to financially support the family, Joshua grew up without a male role model at home. Josh turned to the streets and started using drugs and then selling drugs. Mr. Walker's record shows a number of juvenile convictions for a variety of offenses and then as he became an adult, he had his drug conviction. In 2004, at the age of 20, he was convicted and sentenced to 120 months in prison for possessing with intent to distribute between 5-20 grams of crack cocaine.

During his time in prison, Josh did a lot of self-reflection and tried desperately to discover the person he wanted to be. He concluded that he didn't want to be a criminal or a drug dealer, but wanted to make something of himself. Upon his release from prison in 2014, he vowed to put this plan into action. Over the next few years, Josh dedicated himself to working in order to provide for himself. He worked various manual labor positions, but he wanted a career. He had completed numerous programs during his time in prison and he wanted to apply what he learned in those programs to his life outside the prison walls.

Upon his release he moved to Phoenix, Arizona.  While in Phoenix, he met his fiancé and they started a life together.  In addition to starting a life with his fiancé, he started taking photography classes at the local community college.  Josh wanted to start his own photography business, and did so by founding Presidential Photography.

Since his release from prison in 2014, Joshua Walker has demonstrated his commitment to staying away from selling drugs as well as the criminal justice system in general. Joshua Walker has had no new criminal convictions or even a single traffic related infraction since his release from prison.  Joshua Walker will not claim he was a perfect citizen during these years, but he does represent to this Court he abandoned his old way of life. He remains committed to his business and his fiancé, and was staying away from the negative influences.

This turn-around by Josh is not unheard of for defendants who commit a number of offenses as a young adults or juveniles. The Supreme Court has recognized that adolescents and teenagers are "comparative[ly] immature[e]," and are "more vulnerable or susceptible to negative influences and outside pressures," and have a character "not as well formed as that of an adult." *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005). For these reasons, "their irresponsible conduct is not as morally reprehensible as that of an adult," and "a greater possibility exists that a minor's character deficiencies will be reformed." *Id.* at 570.  Joshua Walker, in his late teens and prior to his 21st birthday demonstrated significant lack of maturity, but as he grew older and went into his 30s, he grew more mature and demonstrated this new found maturity.

In determining his sentence, Joshua Walker asks this Court to consider his personal history and the circumstances his family now faces. Josh suffered major traumas during his formative years – the death of his father, as well as the deaths of two of his brothers – all of which had a profound effect on him and sent him down a dark path. Josh began a life he was not

proud of, but he has paid for those acts, and has made a dramatic turn-around since 2004. He has not been involved in the judicial system, he was working, going to school and trying to grow his photography business.

## V. The circumstances surrounding his offense

Despite the circumstances of the last five years, as detailed above, Joshua Walker was convicted of illegally possessed ammunition. The events that night were detailed in the jury trial presided over by this Court. On that evening, Joshua Walker went to the Westender bar to socialize with friends. He walked in and sat at the bar. He said hello to a few friends and acquaintances at the bar, but never did anything aggressive or confrontational to anyone at the bar. The same cannot be said for the decedent, Aaron Mason. The videos show Mr. Mason becoming increasingly agitated with Joshua Walker being at the bar as the night went on. When Mr. Mason's apparent anger reached a boiling point, he put his fighting gloves on, cinched up his shoe laces and walked over to where Joshua Walker was sitting. Aaron Mason knew exactly what he would be doing when he got to Joshua Walker. Once Mr. Mason was within striking distance of Joshua Walker's seat, Mr. Mason unleashed a vicious unprovoked attack where he threw countless punches and blows to Josh's head and body (See Exhibit "___", Statement of Cuyahoga County Prosecutor Michael O'Malley). Once Joshua Walker started to defend himself, the two men crashed through the front door onto the sidewalk where shots were fired. Unfortunately and tragically, Mr. Mason was wounded and died. The entire incident happened in a matter of seconds.

On October 25, 2018, Joshua Walker was indicted by the Cuyahoga County Grand Jury with a litany of offenses (See Exhibit "B") including murder, voluntary manslaughter, felonious assault and weapons under disability. The case was scheduled for trial, but moments before the

7

jury was called, the State of Ohio dismissed the entire case against Joshua Walker, including the voluntary manslaughter and the weapons under disability. Almost immediately after the dismissal of the charges in state court, the United States Attorney's office indicted Joshua Walker for being a felon in possession of ammunition. It is important to note, the Cuyahoga County Prosecutor stated the reasons for the dismissal of the murder and voluntary manslaughter charges was the video and the acknowledgment of Joshua Walker's right to self-defense. (See Exhibit "__".

The State of Ohio did not need to dismiss the entire case as it could have kept and gone to trial on the charge of weapons under disability (WUD), but they chose to dismiss the entire case only to have the U.S. Attorney's office indict Josh for the identical conduct. Joshua Walker asks this Court to be cognizant of the disparity of sentences as to what he faced in state court and the potential sentences he faces now in federal court for the identical offense. In the Cuyahoga County Court of Common Pleas, a WUD offense is a 3rd degree felony, punishable by 9-36 months in prison with the possibility of probation. However, in the instant case, since he was indicted by United States Atorney's Office for the same conduct, his range is now substantially increased to a potential 87-108 months, according to the PSR, due to a cross reference guideline increase (i.e. voluntary manslaughter) (PSR ¶13).

Without the cross-reference increase, counsel would suggest Joshua Walker's offense level would be a 20 recognizing he had a prior predicate offense 2K2.1(a)(4). Joshua Walker's Criminal History remains a III resulting in a sentencing range of 41-51 months, prior to acceptance of responsibility or any other departures or variances. With a reduction for acceptance his guideline range would be 33-41 months.

## VI. Acceptance of Responsibility

The government has objected, and the PSR does NOT credit the Defendant with acceptance of responsibility. On information and belief, the reason for the refusal to grant credit for acceptance under USSG 3E1.1 is application note 2 which states an adjustment "is not intended to apply to a defendant who puts the government to its burden of proof by denying the essential factual elements of guilt". It continues by stating the acceptance adjustment may still be given where a defendant goes to trial to preserve an issue not related to factual guilt. That is precisely what occurred in this matter.

This Honorable Court may remember Joshua Walker requested a number of defenses to be included in the jury instructions. This Honorable Court approved and read the "Justification" defense to the jury as a defense, over the government's objection. This particular defense was not only raised in the instant case, but also in the Court of Common Pleas case. Joshua Walker's own acceptance letter acknowledges he "possessed the firearm as depicted in the videos". The question has always been was he acting in self-defense or was he justified in possessing the ammunition. The jury disagreed and rendered a guilty verdict. That however, does not prohibit Joshua Walker from receiving an adjustment for his acceptance of responsibility.

Further, the government ignores Application Note 1 which states a "defendant is not required to volunteer; or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction". Apparently, the government has forgotten or simply ignored Joshua Walker can still be indicted by the State of Ohio for every charge dismissed in state court. Joshua has admitted he "possessed the firearm as depicted in the videos." 3E1.1 does not require Joshua Walker to admit anything more in order to be granted the acceptance adjustment. Certainly, a Defendant maintains his 5th Amendment right not to incriminate himself.

Compelling Joshua Walker to make a lengthy and/or detailed statement accepting responsibility to obtain a two (2) level adjustment would be unfair and a potential violation of his 5th Amendment rights considering he could be re-indicted on previously dismissed state charges. All the State of Ohio would need to possibly re-indict Joshua Walker may be statement of the Defendant (i.e. a letter of acceptance of responsibility submitted by Joshua Walker detailing the facts of the entire case and not simply an acceptance he possessed a ammunition). 3E1.1, Application Note 1 explicitly does not require such a statement.

Counsel would submit Joshua's statement accepting the jury's verdict along with his acknowledgment the video shows him with a firearm in his possession is sufficient to warrant a two (2) level adjustment to his offense level U.S.S.G. 3E1.1. Nothing additional should be required.

### VII. Manipulation of the Forum through the Federal Indictment

The government, by indicting Joshua Walker after the State of Ohio dismissed their indictment, has manipulated the offense level and thus Joshua Walker's potential sentence. In the Cuyahoga County Court of Common Pleas, Joshua Walker, if convicted of WUD, could be sentenced to 9 to 36 months in prison. A conviction for the same conduct in federal court subjects Joshua Walker to a statutory maximum 10 year sentence as well as subjects Joshua to cross-reference increases which have be suggested in this case. All because of the court, or forum, where the indictment was issued and nothing else. Everything else was identical. In order to prevent such manipulation "a sentencing court may control any inappropriate manipulation of the indictment through use of its departure power" U.S. v. Gamez, 1 F.Supp. 2d 176 (E.D. N.Y. 1998). See U.S. v. Dietz, 991 F.2d 443 (8th Cir. 1993) (J.Bright dissenting) where state dismissed state charges but U.S. Attorney indicted the Defendant. J. Bright

suggested sentencing courts retain the power to limit the government's power of indictment and potential sentences in certain circumstances (i.e. when the State dismisses the charges only for the Defendant to be indicted by federal prosecutors).

As mentioned above, the federal government was able to manipulate the judicial forum where Joshua Walker was to be charged.  The State had already dismissed the state indictment only to have the federal government come in and indict Joshua Walker with the knowledge the statutory maximum in federal court would far exceed what could be imposed under the Ohio Revised Code.  In addition, both the state prosecutor's office and the US Attorney's office knew the potential for a cross-reference increase in the guidelines due to the death of Mr. Mason. (Cross-Reference Increase will be discussed *infra.*)  The combination of these two factors has allowed the government to unfairly manipulate Joshua Walker's potential sentence by simply changing one factor, the court where he was to be tried.  Counsel would suggest the Court use its departure powers and impose a sentence consistent the sentences authorized by the Ohio Revised Code; that being 9 to 36 months.

**VIII.   Cross-Reference Increase was Mis-applied and Improper Due to the Facts of the Matter**

While counsel concedes the USSG permits the use of cross-references to increase an offense level, in the case sub judice, its use was inappropriate and unwarranted under the facts and guideline applications.  In this instant matter, Joshua Walker's offense level was increased from a purported level 20 to a level 29 due USSG 2K2.1 Subsection (c)(1)(B) wherein the increase resulted due to the death of Aaron Mason.  In applying 2K2.1(c) – Cross Reference, the US Probation Department suggests the cross reference would apply and the "most analogous offense" would be voluntary manslaughter as defined by 18 U.S.C. 1112(a) – "Upon a sudden quarrel or heat of passion" resulting in an increase in the offense level to 29.

11

Counsel would suggest 2K2.1(c) (1) is inapplicable in the instant matter. For it to apply, two (2) elements must be present before looking for the "most analogous" offense. Those two elements are 1) the defendant "used or possessed any firearm or ammunition" 2) in the "commission of another offense". In this matter, the video depicts Joshua Walker with the firearm/ammunition, which is element one (1) above. But both elements must exist before the cross-reference can be invoked. Element two (2) of subsection (c) – cross-reference requires Joshua use the firearm in the commission of another offense. That did not happen here. Joshua Walker was only indicted and only convicted of being a felon in possession. He never used the ammunition in the commission of any other offense; thus there is no second element and a cross-reference increase is inapplicable.

Further, neither the USSG nor the PSR address the factors or facts of the actual event when attempting to determine whether a cross-reference increase with voluntary manslaughter is appropriate. The PSR and the government ignore the conclusion and decision of the Cuyahoga County Prosecutor's Office in dismissing the voluntary manslaughter count and the US Attorney's Office failing to even charge Joshua Walker with that offense. When considering a cross-reference increase, the Court not only must consider a death resulted, but it must also consider any defenses available to Joshua Walker. If there are valid defenses, then by definition it could not be used in the "commission of another offense" as there is no other offense.

In this case, there is significant evidence the defense of self-defense and justification were instrumental in the dismissal of murder and voluntary manslaughter charges as well as what charges were filed in federal court. It was the determination of a state prosecutor who indicted Joshua Walker for voluntary manslaughter to dismiss that charge along with the entire indictment on the day of trial citing Joshua Walker's right to self-defense. (See Exhibit

"_____").  It would be inappropriate to elevate the offense level, via cross-reference, for conduct the state expressly dismissed and the federal government chose to NOT proceed upon due to the strength of Joshua Walker's self-defense defense.  Not charging Joshua Walker with voluntary manslaughter was not an oversight by the US Attorney's office, and the dismissal of the voluntary manslaughter in Cuyahoga County was done after thoughtful and considered analysis of the facts and how self-defense would have impacted the case.  See U.S v. Monk, 15 F.3d 25, 28 (2nd Cir. 1994) where the district court departed since defendant was convicted of a single count but relevant conduct would have significantly increased his sentence.  See also, U.S. Concepcion, 983 F.2d 369 (2nd Cir 1992).  Without considering possible defenses to a cross-reference increase, the USSG becomes a one way valve allowing only increases to the offense level, but leaving a Defendant helpless to refute any cross-reference increase with valid defenses.

    If the Court accepts the cross-reference, the most analogous offense is NOT voluntary manslaughter, but rather involuntary manslaughter.  The PSR suggest voluntary manslaughter is the most analogous offense due to a "sudden quarrel or heat of passion".  However, counsel would suggest that is a misunderstanding of the law.  The typical law school example of "heat of passion" is when a husband walks in on his wife and her convicted felon paramour.  The husband becomes enraged and kills the paramour.  But in this case, it is Aaron Mason who becomes enraged and starts an unprovoked attack.  Aaron Mason starts the sudden quarrel and only after Aaron Mason's unprovoked attack does Joshua Walker defend himself.  Applying the facts of this case to the paramour scenario would be if the husband walks in on his wife and her paramour and the husband takes a gun out and shoots at the paramour but misses.  In response, the paramour takes out his gun and shoots and kills the husband.  Certainly, the paramour would

not be charged with being a felon in possession and/or voluntary manslaughter since he was simply defending himself. The same should apply to this case with Joshua Walker.

If any cross-reference would be applicable it would be "Involuntary Manslaughter", 18 U.S.C. 1112(a) wherein "the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death". Similarly here, Joshua Walker possessed ammunition unlawfully and without due caution committed an act which might produce death. (i.e. Joshua Walker acted lawfully in self-defense, but did so without due caution which could have produced death). The Ohio Revised Code, 2903.04, defines Involuntary Manslaughter as "No person shall cause the death of another…as a proximate result of the offender's committing or attempting to commit a felony". At worst, that is what Joshua Walker did here: he caused the death of another while committing the offense of being a "felon in possession" or "having a weapon under disability". Using the cross-reference with involuntary manslaughter would have no effect as the offense level for involuntary manslaughter pursuant to 2A1.4(a)(2) would be an offense level 18 which is less than the level 20 for a felon in possession pursuant to 2K2.1(a)(4) would be a level 20.

A careful review of the commentary of 2K2.1, commentary note 15 suggests a downward departure if (A) none of the enhancements in subsection (b) apply, (B) the defendant was motivated by an intimate or familial relationship or fear to commit the offense and was otherwise unlikely to commit such an offense, and (C) the defendant received no monetary compensation from the offense. The facts of this case satisfy A, B and C as Joshua Walker was in absolute fear of his life during the unprovoked attack by Aaron Mason. Additionally, the video surveillance bears out but for Aaron Mason's vicious ambush Joshua Walker was unlikely to commit any offense whatsoever. Finally, Joshua Walker did not do anything for compensation.

Accordingly, Joshua Walker would request a downward departure to a guideline range sentence of 9-36 months.

### IX. The Victim's Conduct Precipitated the Defendant's Response

U.S.S.G. 5K2.10 authorizes a sentencing court to reduce a sentence below the guideline range if the victim's conduct significantly contributed to provoking the Defendant's offense conduct. This section allows the Court to examine various factors. Specifically, it allows the Court to review:

1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.

(2) The persistence of the victim's conduct and any efforts by the defendant to prevent confrontation.

(3) The danger reasonably perceived by the defendant, including the victim's reputation for violence.

(4) The danger actually presented to the defendant by the victim.

(5) Any other relevant conduct by the victim that substantially contributed to the danger presented.

(6) The proportionality and reasonableness of the defendant's response to the victim's provocation.

An examination of these factors suggests this Honorable Court should depart and impose a sentence below the current guideline range. Mr. Mason was physically much larger than Joshua Walker. Mr. Mason wore gloves in an attempt to cause greater harm to Mr. Walker as well as avoid leaving DNA or other identifying material behind after the attack. Joshua Walker did nothing to provoke the attack and frankly did everything to avoid the attack. Joshua Walker

15

sat on his bar stool and minded is own business. He stayed away from Mr. Mason and did not even talk to him. Joshua Walker was minding his own business before the vicious attack was launched by Mr. Mason. The third factor is the danger reasonably perceived by Joshua Walker. It was well known Mr. Mason was a violent individual as he had numerous convictions for drugs and two (2) convictions for aggravated robbery. One of the robberies involved his use of a firearm in the commission of the aggravated robbery offense. (See Cuyahoga County Case 441633 and 491941, attached as Exhibit "____" and "_____"). The attack perpetrated by Mr. Mason upon Joshua Walker here was both extremely violent and totally unprovoked. Mr. Mason repeatedly punching and hit Joshua Walker in the face and body. The fourth factor is the danger actually presented to Joshua Walker. The danger actually presented was significant. As the Court saw on the various videos, Mr. Mason violently attacked Joshua Walker and never stopped punch and beating him. It's reasonable to conclude Aaron Mason would have continued to beat and pummel Joshua Walker until he was at a minimum unconscious if not dead. The actual danger was real. The 5th and 6th factors will be addressed together. Due to the physical size difference, the viciousness of the attack, the constant punches being thrown and the reasonable belief that Joshua Walker's life was in danger Joshua Walker was forced to defend himself. Joshua Walker feared for his life. In light of the above, Joshua Walker would request this Honorable Court impose a sentence below the guideline range and in the range of 9-36 months pursuant to 5K2.10.

## X.     Imperfect Justification/Duress/Coercion Defenses

5K2.12 provides this Honorable Court an additional basis to depart downward from the guideline sentence. Counsel understands the jury was instructed on the justification defense in this case, however, counsel would submit that while the facts may not have been sufficient to

establish a complete defense to the conduct the facts do warrant a downward departure. The discharge of the firearm was a direct result of the serious and violent attack initiated by Aaron Mason. Considering Joshua Walker was being beaten and was much smaller than Mr. Mason, Joshua Walker tried to defend himself and to stop the attack. In doing so, Mr. Mason was shot. 5K2.12 states "Ordinarily coercion/[justification/duress] will be sufficiently serious to warrant departure only when it involves a threat of physical injury or substantial damage to property…" U.S. v. Johnson, 956 F.2d 894, 901 (9th Cir. 1992) which held a downward departure was warranted when Defendant was beaten but the duress/[justification] defense was insufficient to afford a complete defense. See also U.S. v. Meyers, 952 F.2d 914, 920 (6th Cir. 1992). The instant case is the precise type of case and fact pattern to grant a downward departure for justification. While the jury may have determined Joshua Walker's justification defense was imperfect and not a complete defense, nonetheless, this Court should consider 5K2.12 and impose a sentence below the guideline range and instead in the range of 9-36 months.

**XI. The Disparity in Sentences Contemplated by the USSG and the Ohio Revised Code Warrant a Downward Departure.**

Counsel would submit one of the basic tenets of the Sentencing Guidelines is to eliminate sentencing disparity not only among co-defendants but also among those who have committed similar conduct regardless of whether they were convicted in state or in federal court. If Joshua Walker was indicted in state court, his sentence range was between 9-36 months. When he was indicted in federal court, his offense level should be at most a 20, with a Criminal History III resulting in a guideline 41-51 months without a 2 level reduction for acceptance. With the 2 level reduction for acceptance his offense level would be 18 and his guideline range would be 33-41 months without any additional departures or variances.

17

But here, an alleged cross-reference under the USSG increases Joshua Walker's guideline range from 108-135 months (without acceptance) or 87-108 months with acceptance.  Thus, the sentence contemplated in federal court for identical conduct if committed state court ranges from around 3.75 times greater to 12 times greater in federal court.  In both cases, the defendant is the same, the location is the same, the date of the offense is the same, the victim is the same, and most importantly the conduct is the same.  The only difference between being sentenced to 9-36 months and 108-135 months or 87-108 months is the courtroom he walks into.  The disparity in sentences between Cuyahoga County and United States District Court in this case is unconscionable.  The Sentencing Guidelines are designed to eliminate this type of disparity. U.S. v. Ray,  930 F.2d 1368 (9th Cir. 1991).  Accordingly, Joshua Walker would request this Court to impose a sentence in the range of 9-36 months.

**XII.    Under all the circumstances of this matter, U.S.S.G. 5K2.0(c) authorizes a departure.**

U.S.S.G 5K2.0(c) clearly states "[t]he court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure.  Based on all the factors and circumstances set forth above, Joshua Walker would submit a departure would be warranted in his case pursuant to U.S.S.G. 5K2.0(c).

**XIII. Conclusion**

Considering all the mitigation set forth in this memorandum, together with Joshua Walker's allocution at his sentencing hearing, he requests this Court impose a sentence range below the guideline range and between 9-36 months which is sufficient but not greater than necessary to achieve the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Timothy J. Kucharsski
Timothy J. Kucharski [0062226]
1200 W. 3rd Street
Suite #190
Cleveland, Ohio 44113
Ph. 216.623.6600 / 216.857.3001
Fax 216.574.9813
Attorney for Joshua Walker

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2019, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

Respectfully submitted,

/s/ Timothy J. Kucharsski
Timothy J. Kucharski [0062226]
Attorney for Joshua Walker